May it please the Court, Lucas Mundell on behalf of Roque De La Fuente. Could you speak up a little, please? Oh, I'm so sorry. Absolutely. We'd like to open based upon the Court's original request that we address mootness. The appellant would like to concede— But you're up here on a preliminary—denial of a preliminary injunction. Yes, Your Honor. So why isn't it moot now? It is—well, a portion thereof is now moot, and that was the request that De La Fuente be placed on the ballot. Of course, we can't turn back time. I'm sorry. Go ahead, Your Honor. Well, I want to emphasize what Judge Pius asked. This is an appeal for a preliminary injunction. We're not saying the case is moot. Yeah. Correct. But why isn't the preliminary injunction question moot? Well, De La Fuente originally requested that this Court, and this is the Court that the appellant wishes not to concede, is that this Court actually instruct the district court that the rationale they're holding, which is really the crux of the case is their reliance on Nader v. Cronin, was in error. And I'd be happy to explain that to the Court. That is what we're requesting at this point. We no longer believe that that—or we do not believe that that issue is moot. But you couldn't possibly show irreparable harm, any kind of imminence of irreparable harm at this point. I suspect we can, and for many reasons. Can? C-A-N? Yes. Yes. I assume the next time you want to be in the ballot is— if you do want to be in the ballot, it's in four years. Yes, and De La Fuente has announced his candidacy for 2020. So this is capable of repetition. Our concern at this point is that—and we understand that we will be heard on the merits in the district court. However, the Court has stated that Nader v. Cronin presents an insurmountable bar to the plaintiff's claims, claims being the entirety of his case. If the district court— But you don't get an interlocutory appeal on that. You still have to be able to appeal the denial of the preliminary injunction as a co-op preliminary injunction. I understand, Your Honor. So, in other words, you have to be able to demonstrate that the preliminary injunction issue as to whether you should have an injunction in advance of trial because something's going to happen before the trial is still a live one, and I don't see how it is. Well, the rationale is the concern at this point. And we see going forward with the district court— Well, that's a whole other issue. When you get back down to the district court and you start litigating the merits of the case, you'll be able to try and convince the judge that his tentative assessment on the— when he denied the preliminary injunction or T.R. or whatever it was he did. But he was wrong. Take another look. Reconsider. Do whatever. If you lose, you can appeal. Of course, and I suspect based upon— And we've got plenty of time between now and 2020. Well, I think based upon, you know, judicial economy, I suspect we will be back here and we're going to be arguing the same exact situation, is that the holding in Nader v. Cronin was misapplied. The district court's already stated that it's an insurmountable bar, and it's so early in the lower court case that we suspect that that will be their driving factor and continue to be their rationale. Yes, but you don't get an interlocutory appeal unless there's some live question, alive injunction. I understand that, Your Honor. It is appellant's belief that moving forward, since we've already included in our appeal the request for this instruction, we're already here. We've conceded the parts that we believe to be moot. We're simply requesting the court to instruct that the rationale was in error, thus we can move forward on the merits. And the lower court actually has the instruction and the advice of this court so that we can move forward on those merits, and then it's done. And then we've dealt with it. We're already here. We don't give advice. I understand, and we're not asking for an advisory opinion. What we're asking is that the lower court erred in their rationale. They misapplied the law. And that's what brings us here today. We know that we will face that in the future. We're already here. We concede that certain issues now are moot because of the ballot access issues. But moving forward, we would like to take this opportunity to request that the court make that instruction, and we're prepared to argue as to why. Nader v. Cronin does not apply. You'll notice that the lower district court relied on it simply and blindly based upon that the 1% requirement from the revised code, the Hawaiian revised code, was 1% of votes placed in the last presidential election. Now, compare that, contrast it rather, with California Election Code 8400, which is 1% of all registered voters. Now, the district court says specifically that this is an insurmountable bar, this kind of ends our inquiry, and that we have to essentially allow this case to kind of overpower the merits of our underlying case. We posit that those two simply cannot compare. If you look at not only the numbers, and we understand that the discrepancy in the population amounts to, I think it was 4,300 votes equated with 1%. In California, we're looking at 180,000 votes. Now, most importantly, I'm sorry, Your Honor. The rationale, obviously, is that because the electorate is so much bigger, you're going to have to attract those people to vote for you, so a whole lot more people than in Hawaii. Of course. So it's perfectly sensible to have a larger demonstration at the outset to show the point of doing that. Well, essentially, I think what it all boils down to is the fact that the population has more burdens. And we totally agree, and that's what I was moving on towards next, is simply that this is a weighing of the burden versus the state interest. We understand that from Anderson. And the burden itself cannot be simply calculated based upon numbers. Now, while we think that's persuasive, the 180,000 signatures required versus 4,000, the actual burden comes down to dollars and cents. The same candidate asking to be put on the ballot in Hawaii spends $28,000. Okay, but how much does he spend on the election after that? I'm so sorry? But how much do they have to spend to get elected in Hawaii versus to get elected in California? In other words, it's a proportion of the proportional problem is because you're the whole thing is much more burdensome. Well, I can't speculate to post-signature expenditures. Well, you can make a guess that it's going to cost more to get elected in California than in Hawaii. I suspect you're right, Your Honor. I am simply comparing the cost, the initial cost of getting those signatures in Hawaii, $28,000. In California, $1.15 million just to get on the ballot. And that does not factor in the excess that most reasonable candidates account for, and 25 to 30 percent of those signatures gathered are rejected. So that increases the value by 8,500 in Hawaii and 3.5 million approximately in California. We're now looking at a reasonable candidate spending $1.5 million to become an independent candidate. I think this is probably the most appropriate time to revisit some of these election laws and the bar to ballot access. Clearly, we have some issues with ballot access and the options of the voters, which we believe is another harm that was done. Therefore, the two cannot be compared. It is not in our surmountable bar, and if this court agrees, instruct the lower court that we can move on and that Nader v. Cronin is not the applicable bar on its case. Thank you. Thank you. May it please the Court. I am Jonathan Eisenberg for California. Your voice up. I am Jonathan Eisenberg for California Secretary of State Alex Padilla. I agree with most of the points that the Court has made, and I could more or less reiterate them. The case is moot, and the district court ---- The appeal is moot. Yes, I misspoke. The appeal on the preliminary injunction ---- Are you contending the whole case is moot? No. I just misspoke. I just misspoke. But also, the district court was not making an absolute final ruling on the applicability of the Nader case. The district court was ruling on the question of likelihood of success on the merits, not ultimate success on the merits. So however the district court characterized the Nader case on the preliminary injunction motion is not going to bind the Court later. And I do agree with the Court that it's not ---- there's not a live controversy that would permit the Ninth Circuit to give ---- to have Mr. De La Fuente's name put on the ballot for the general election as an independent candidate, despite not having met the signature gathering requirement of California Elections Code Section 8400. And that's it? That's what the preliminary injunction motion was about. He suggested there was something else that was in the request, maybe something more like a declaratory relief as to the applicability of Nader. There is a declaratory relief prayer in the complaint. But he suggested that there was ---- when he got up, he said the ---- he agrees that the preliminary injunction request was partly moot, but he thought there was a part of it that wasn't moot. What was that? I'll ask him. Thank you, Your Honor, because the district court is not going to be making a declaratory judgment in response to a motion for a preliminary injunction. No, I think that's correct. That's not the question that's presented to the Court. If the Court would like to entertain discussion from me about the applicability of the Nader case, I'm happy to provide it or ---- Well, it can all be freshly visited on ---- revisited on ---- at the district court, either on summary judgment or on a more robust record than what exists today. I fully agree. I'm just offering that if you want to quiz me on that case, I'm happy to address it right now. I don't. All right. Well, then I am prepared to waive the rest of my time. Okay. Thank you. Thank you. I think we've heard it all from you, Counsel. So we will submit the matter at this time, and thank you, Counsel, very much. The matter ends our session for today and for the week, and we wish you all the best. All rise.
judges: Paez, Berzon, Christen